**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | |
|---|---|
| DUANE SHAW, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Case No.: GLS-21-1986 |
| | ) |
| UNIVERSITY OF MARYLAND, | ) |
| COLLEGE PARK, et al., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff Duane Shaw ("Plaintiff") brings this action against Defendants University of Maryland, College Park ("Defendant UMD"), John Romano ("Defendant Romano"), and John Farley ("Defendant Farley") (collectively, the "Defendants"). (ECF No. 27) ("Amended Complaint"). Plaintiff advances three claims: Count I: race discrimination (disparate treatment and hostile work environment) by Defendant UMD, in violation of 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); Count II: race discrimination (disparate treatment and hostile work environment) by Defendants Romano and Farley, in violation of 42 U.S.C. § 1981 ("Section 1981" or "§ 1981"); and Count III: breach of contract committed by Defendant UMD, in violation of Maryland law. (*Id.*).

Pending before this Court is "Defendants' Motion to Dismiss" (ECF No. 38) ("Motion"), which Plaintiff opposes.[1]  The issues have been fully briefed, *see* ECF Nos. 41, and 42, and this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth more fully below, Defendants' motion is **GRANTED IN PART, DENIED IN PART**.

---

[1] This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 10).

I.    **FACTUAL BACKGROUND**[2]

In October 2012, Plaintiff, an African-American male, began working for Defendant UMD in the Division of Research, Center for Advanced Study of Language's ("CASL"), Information Technology ("IT") section. (Amended Complaint, ¶ 6). Plaintiff took part in research initiatives, co-developed an intellectual property folder that was used by his supervisor to demonstrate the organization's capabilities and served as a technical adviser for demonstrations to potential customers. (*Id.*, ¶ 8). Also, the Plaintiff worked on contracts with the federal government, serving as the technical subject matter expert on classified matters. (*Id.*, ¶ 6). Accordingly, Plaintiff's work duties required that he maintain a security clearance. (*Id.*). In this role, from 2012 to 2018 the Plaintiff received performance reviews indicating that he met or exceeded performance objectives. (*Id.*, ¶ 8). Nonetheless, as time passed, Defendant Romano began to resent Plaintiff as sponsors preferred to work with Plaintiff and opted to rely on Plaintiff more than Defendant Romano despite Defendant Romano instructing sponsors that they needed to go through him. (*Id.*).

From 2014 to 2018, Defendant Romano subjected Plaintiff to bias and humiliation. (*Id.*, ¶ 9). Furthermore, Defendant Romano condoned intimidation by Plaintiff's coworkers which was directed toward Plaintiff. (*Id.*). As one of three African Americans in his department, colleagues did not respect Plaintiff's opinions, achievements, and considered the Plaintiff a "worker bee." (*Id.*). Other engineers in the IT department excluded Plaintiff from projects related to planning and infrastructure, despite the requirements that engineers communicate about such projects. (*Id.*).

During this period, Plaintiff helped create an intellectual property application for a contractor, over which he maintained an ownership stake of twenty-five percent. (*Id.*). However,

---

[2] Unless otherwise noted, the facts are taken from the Amended Complaint, ECF No. 2, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

when presenting the application to the contractor, Plaintiff was not presented as an equal partner in the application. (*Id.*). Instead, he was "relegated to a low-level role." (*Id.*).

In April 2018, Defendant Romano provided Plaintiff with a performance review in which there were "a myriad of inaccuracies." (*Id.*, ¶ 10). After confronting Defendant Romano about the performance review, Defendant Romano told Plaintiff that he "'do[es] not even know what [Plaintiff] do[es].'" (*Id.*). During that conversation, Defendant Romano told Plaintiff that the performance review would not affect his chances at a promotion or access to work assignments. (*Id.*). Thereafter, Plaintiff reached out to the CASL human resources ("HR") representative to discuss the performance review. (*Id.*). Plaintiff never received a reply from HR despite Defendant Romano's assurance that Plaintiff's response to the performance review could be discussed further. (*Id.*).

In July 2018, Defendant Romano non-competitively promoted a non-African American engineer over Plaintiff, even though Defendant Romano previously told Plaintiff that the April 2018 performance review would not impact his promotion and Plaintiff performed job duties equivalent to the individual promoted. (*Id.*, ¶ 11). In October 2018, Plaintiff spoke with Defendant Romano about Defendant Romano hosting meetings with the other engineers and the other engineers excluding him from meetings and communications. (*Id.*, ¶ 12). Defendant Romano told Plaintiff that the other engineers were working on a project that didn't include him. (*Id.*). However, Plaintiff explained that the projects would affect him because all projects interact. (*Id.*).

Earlier in the year, Plaintiff, while testing the email accounts of his fellow engineers for malicious software, discovered an email from a white engineer to the engineering team that secretly documented the Plaintiff's work and meetings with fellow African-American employee named Zanake Renibe. The emails portrayed the Plaintiff in a negative light. (*Id.*, ¶ 13). Prior to

the discovery of the emails, there was tension between Plaintiff and the white engineer. (*Id.*). Plaintiff raised this dispute with Defendant Romano on two different occasions, but Defendant Romano did not take any action. Instead, Defendant Romano told Plaintiff that he "'need[ed] to be like a duck and let this roll off his back.'" (*Id.*).

On November 15, 2018, Plaintiff, Zanake Renibe, and another African-American employee, named Aye Vines, were terminated. (*Id.*, ¶ 14). Defendant Farley, a white male and the former Interim Operations Director for the Division of Research, required the three African-American employees to leave the main building and go to a secure location in a separate building on the UMD campus, which had been evacuated prior to their entry. (*Id.*). Once at this location, Defendant Farley gave the group notice of their termination. (*Id.*). In the room adjacent there was an armed, plain-clothed officer. (*Id.*). Defendant Farley claimed that the presence of the officer was necessary because he did not know how Plaintiff and the other employees would react and "feared" that they would have a weapon. (*Id.*). Thereafter, the three were prohibited from reentering their offices to collect personal belongings and stripped of building access. (*Id.*). Moreover, employees with security clearances normally undergo a formal debriefing. (*Id.*, ¶ 15). The Defendants did not perform this debriefing for the Plaintiff. (*Id.*). In addition, although not required, Defendant Romano made the decision to deactivate the Plaintiff's top-secret security clearance. (*Id.*).

In contrast to Plaintiff's firing, in April 2013, there were layoffs in CASL during which multiple white employees were dismissed, including employees in Plaintiff's department and section. (*Id.*, ¶ 7). Those employees were given notice of their dismissal months in advance and were permitted to continue working until their termination. (*Id.*). The white employees received notice of their dismissal in their normal work location, and were not isolated from other employees.

Nor were the white employees confronted with the presence of armed security. (*Id.*). Furthermore, a fourth employee was terminated via layoff at the same time that Plaintiff was terminated (*Id.*, ¶ 15). The fourth employee did not have to report to a separate building, nor was the employee notified of the termination in the presence of armed security. (*Id.*, ¶ 15).

According to Plaintiff, his termination was pretextual, i.e., he was fired because he is African-American. The Defendants claimed that Plaintiff was terminated due to budgetary constraints. (*Id.*, ¶ 16). This claim conflicts with the fact that Plaintiff was paid $8,000-$10,000 less than other engineers in his section. (*Id.*).

## II.    PROCEDURAL BACKGROUND

On November 15, 2018, Plaintiff was terminated from his employment. On April 9, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 38-2) ("Charge"). On August 5, 2021, Plaintiff filed this action against the Defendant. (ECF No. 1). On November 23, 2021, Plaintiff filed a letter request to file an amended complaint (ECF No. 23). On November 29, 2021, the Court granted the Plaintiff's request to file an amended complaint. (ECF No. 24). On December 21, 2021, the Plaintiff filed his Amended Complaint. (ECF No. 27).

Defendants filed the instant Motion, which Plaintiff opposed, and the Defendants filed a Reply. (ECF Nos. 38, 41, 42).

## III.    STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may allege that sovereign immunity serves to be a jurisdictional bar against the claim. *Cunningham v.*

*Gen. Dynamics Info. Tech., Inc.,* 888 F.3d 640, 649 (4th Cir. 2018). When a defendant challenges subject matter jurisdiction, plaintiff bears the burden of establishing that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(1) challenge to subject matter jurisdiction may proceed "in one of two ways:" (1) by mounting either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or (2) a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, however, a "court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. Under this scenario, at court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). If a court finds that subject matter jurisdiction is lacking, then the complaint must be dismissed. *Cunningham*, 888 F.3d at 649.

**B.  Motion to Dismiss for Failure to State a Claim**

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), that defendant is asserting that, even if you construe the facts advanced in the plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, then, a complaint must contain sufficient facts, and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest

a "cognizable cause of action"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, Civ. No. RDB-12-237, 2012 WL 6562764, at \*4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court cannot consider documents outside of the pleadings to resolve factual disputes. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider documents "attached or incorporated into the complaint," as well as documents attached to a motion to dismiss, "so long as they are integral to the complaint," *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), "and if the plaintiffs do not challenge its authenticity." *Pasternak & Fidis P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 894 (D. Md. 2015).

## IV.   DISCUSSION

Defendants advance three arguments in support of their Motion. First, that the breach of contract claim cannot stand as it is barred by the Eleventh Amendment and the State Sovereign Immunity doctrine. Second, the Plaintiff's Section 1981 claim against Defendants Romano and Farley in their official capacities is barred by the Eleventh Amendment. Relatedly, Defendants assert that because the Section 1981 claim seeks prospective injunctive relief, it must be dismissed as the Amended Complaint does not also contain a claim under 42 U.S.C. § 1983. Third, Plaintiff's Title VII claim against Defendant UMD must be dismissed because the majority of the allegations are: (1) time barred, as they took place more than 300 days before the filing of the Charge; or (2)

procedurally barred as they do not fall within the "scope" of the allegations contained in the Charge. The remaining allegations, according to the Defendant, are insufficient to establish either disparate treatment or a hostile work environment. (Motion, pp. 5-7).

The Plaintiff agrees that dismissal of Count III (breach of contract) and Count II (§ 1981) is appropriate. (Opposition, pp. 1-2). With respect to Count III, the Court has reviewed *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73 (2000) and *Regents of the University of California v. Doe*, 519 U.S. 425, 431 (1996), and finds that dismissal is appropriate as such claims are barred by the Eleventh Amendment. Accordingly, Count III is dismissed without prejudice. *See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). Likewise, regarding Count II, the Court has reviewed *Jett v. Dallas Independent School District*, 491 U.S. 701, 736 (1989) and *Middlebrooks v. University of Maryland at College Park*, 980 F. Supp. 824, 828 (D. Md. 1997) and finds that dismissal is appropriate. Count II is dismissed with prejudice as Section 1983 not Section 1981 is the appropriate vehicle for relief.

With respect to Count I, Plaintiff advances two arguments against dismissal of the Title VII claim: (1) Plaintiff meets his burden of establishing disparate treatment, despite certain allegations being either time or procedurally barred, as employment discrimination claims require no more than a short statement containing an allegation of disparate treatment due to race; and (2) Plaintiff adequately pleaded his hostile work environment claim because hostile work environment claims constitute a "continuing violation," which allows for consideration of facts that would otherwise be time barred. Thus, the Plaintiff asserts that the facts alleged establish the "severe" or "pervasive" misconduct required. (Opposition, pp. 12-16).

**Title VII Claim-Defendant UMD**

    **1.  Disparate Treatment**

Defendant UMD asserts that Plaintiff failed to establish a prima facie claim of disparate treatment. (Motion, p. 8). Primarily, Defendant UMD argues that the Court may only consider facts alleged within the Amended Complaint that took place no more than 300 days before Plaintiff filed his Charge. The Defendant also asserts that the Court may only consider facts alleged within the Amended Complaint that fall within the "scope" of the facts alleged within the Charge. According to the Defendant, the facts which remain after these limitations are imposed fail to establish a disparate treatment claim. (*Id.*, pp. 8-9).

The Plaintiff acknowledges the time and scope restrictions and appears to agree with Defendant UMD that the remaining allegations, after taking into account time and scope limitations are: (1) in October 2018, Plaintiff was not included in meetings with other engineers, and that there was a dearth of communication between him and the other engineers; and (2) the manner in which Plaintiff's termination was administered was hostile and discriminatory. Despite these concessions, the Plaintiff asserts that the remaining allegations are more than enough to satisfy the pleading requirement for a disparate treatment claim. (Opposition, p. 13).[3]

Title VII prohibits employers from "discharg[ing] any individual, or otherwise … discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Before filing suit under Title VII, a litigant must file a Charge with the EEOC within 300 days of the alleged conduct and receive a Right to Sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *see*

---

[3] The failure to promote claim was not included in the EEOC Charge, *see* ECF No. 38-2, and while alleged in the Amended Complaint, the Plaintiff does not continue to assert that it remains live.

*also Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011); *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007) ("Any discrete acts of discrimination that occurred prior to the applicable period are procedurally barred"). An EEOC charge "defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

Generally, if there are claims contained within a complaint that do not appear in the Charge, then those claims are procedurally barred. However, courts have held that this requirement should not "become a tripwire for hapless plaintiffs." *Sydnor v. Fairfax Cnty*, 681 F.3d 591, 594 (4th Cir. 2012). In addition, because lawyers typically do not complete charges, courts construe them liberally. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). Therefore, a court analyzes whether the facts alleged in a complaint "reasonably relate" to the charge. *Id.* For example, if a plaintiff raises multiple claims of employment retaliation in his or her complaint, but only one in the charge, those additional retaliation claims are likely permissible as they reasonably relate to the claim within the charge. *See also Johnson v. SecTek, Inc.*, Civ. No. ELH–13–3798, 2015 WL 502963, at *5 (finding that claims are not procedurally barred where claims within complaint are related to the same "forbidden basis" such as race).

In this case, Plaintiff filed a Charge, (Amended Complaint, ¶ 2), which Defendants attached as an exhibit to their Motion. (ECF No. 38-2). In performing its analysis, the Court can look at the Charge because courts frequently treat a charge as effectively part of a complaint. *See, e.g.*, *Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab.*, Civ. No. AW–12–03172, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013); *Betof v. Suburban Hosp., Inc.*, Civ. No. DKC–11–01452, 2012 WL 2564781, at *3 n. 6 (D. Md. June 29, 2012).

As a preliminary matter, at this procedural juncture, the Plaintiff need only assert a plausible claim of discrimination under Title VII. *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *13 (D. Md. Dec. 17, 2021).[4]

The elements for a prima facie case of discrimination in violation of Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). A plaintiff must allege facts showing that the plaintiff's status as a member of a protected class is the reason for the adverse employment action. *McCleary-Evans v. Md. Dep't of Transp.,* 780 F.3d 582, 585 (4th Cir. 2015). A plaintiff need not make a prima facie showing at the pleading stage; however, the plaintiff must submit a claim that allows a court to go beyond speculation. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

In this case, there are only two allegations that are not time or procedurally barred: (1) Plaintiff's exclusion from projects and communication during October 2018; and (2) Plaintiff's termination of employment on November 15, 2018. (Opposition, p. 13). Therefore, the Court considers these two allegations and analyzes the law related to disparate treatment.

First, Plaintiff asserts that he is a member of a protected class. (Amended Complaint, ¶ 4). Second, the Court finds that Plaintiff has adequately pleaded satisfactory job performance by citing positive performance reviews up through April 2018. (Amended Complaint, ¶ 8). Third, Plaintiff claims that he was terminated, which is clearly an adverse employment action. (Amended

---

[4] The so called "*McDonnell Douglas*" framework is a proof scheme that a plaintiff must satisfy at trial, not at the pleading stage. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). When evaluating whether a Rule 12(b)(6) motion should be granted, courts usually examine the elements of a *prima facie* claim under *McDonnell Douglas* to determine how adequately Plaintiff has advanced plausible factual allegations in a complaint. *Staggers*, 2021 WL 5989212, at *13.

Complaint, ¶ 14). However, the Court finds that Plaintiff's alleged exclusion from communication and meetings do not qualify as adverse employment actions for a disparate treatment claim. Adverse employment actions are limited to actions against an employee that have a "tangible effect on the terms and conditions of employment" such as a termination or demotion. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (categorizing adverse employment actions as things like hiring, firing, failing to promote, or reassigning to a different position with significantly different responsibilities); *Yampierre v. Balt. Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *26 (D. Md. Aug. 18, 2022) (same).

Next, the Court must determine whether, when construing the facts as true and in Plaintiff's favor, Plaintiff plausibly alleged that the adverse employment action was related to his membership in a protected class. The Defendant argues that Plaintiff failed to establish a connection between the adverse employment action and his membership in a protected class because he did not allege facts showing that he was treated differently than similarly situated comparators. (Motion, p. 13; Reply, pp. 3-4). On the other side of the ledger, Plaintiff argues that he properly alleged comparator information by asserting that his white coworkers were treated differently than him "before, during, and after termination." (Opposition, p. 14).

As a preliminary matter, the Court finds that a plaintiff isn't always required to rely on comparator information to show that an adverse employment action is related to his membership in a protected class. *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *28 (D. Md. Mar. 25, 2021) ("A plaintiff is 'not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim'" (citing *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), cert. denied, 562 U.S. 1219 (2011))). However, when a plaintiff's claim relies

on comparator information, the similarity to comparators must be clearly established. *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).

In this case, Plaintiff relies on comparator information to show that his termination was connected to his membership in a protected class. Plaintiff asserts that his termination on November 15, 2018, differed radically from the termination of white employees. (*Id.*, ¶ 14). Plaintiff alleges that he had to go to a different building, staffed by an armed guard, and could not gather his belongings after his termination. (*Id.*). Plaintiff also alleges that the Defendants did not impose any of these conditions on white employees when they were fired. (*Id.*). Plaintiff specifies that some of these white employees belonged to the same department and section as him. (*Id.*). Here, by alleging a difference in termination procedures—which included the revocation of his security clearance—between himself and white coworkers that worked in the same department and section, the Court finds that Plaintiff sufficiently established a connection between the adverse employment action and his membership in a protected class. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) ("comparison[s] will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances"); *see also Woods v. City of Greensboro*, 855 F.3d 639, 650 (4th Cir. 2017) (finding that a court errs when it engages in fact finding on comparator evidence rather than a plausibility analysis).

In sum, the Court finds that the Plaintiff has adequately pleaded disparate treatment and the Motion is denied with respect to this claim.

### 2. Hostile Work Environment

A "hostile work environment" is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [employment] and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264,

277 (4th Cir. 2015). A plaintiff advancing a "hostile work environment" claim based on race must allege that: (1) he was subjected to unwelcome conduct, (2) which was based on his race; (3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and to create an abusive atmosphere; and (4) is imputable to the employer. *Strothers v. City of Laurel Md.*, 895 F.3d 317 (4th Cir. 2018) (citation omitted).

First, in contrast to a disparate treatment claim, the Court finds that in the context of a hostile work environment claim, the Court may consider allegations that occur outside the statutory time period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period").

Here, the Defendants argue that the incidents alleged by the Plaintiff fail to state a plausible claim as they are not "sufficiently pervasive or severe." (Motion, pp. 10-11). Plaintiff contends that he met his burden because his "supervisor constantly yelled and berated him." (Opposition, p. 16). However, in its Reply, Defendants correctly contend that Plaintiff does not allege in the Amended Complaint that his supervisors "constantly yelled and berated him." (Reply, p. 5). Allegations within the Amended Complaint include: (1) workplace intimidation from other engineers such as excluding him from communications and certain projects, which Defendant Romano condoned; (2) the non-competitive promotion of a white employee; (3) an inaccurate poor performance review; (4) inaction by Defendant Romano when Plaintiff raised workplace disputes; (5) not receiving co-equal credit for an intellectual property application; and (6) Plaintiff being called a "worker bee." Furthermore, Plaintiff alleges workplace humiliation at the hands of Defendant Romano, but that claim is not accompanied by a specific factual allegation. (Amended Complaint, ¶¶ 6-14).

14

Although these allegations are unacceptable, the Court finds that they do not meet the standard required for a plausible hostile work environment claim. First, the Plaintiff cannot rely on the assertion that his supervisor "constantly yelled and berated him" as it is not in his Amended Complaint. Second, the allegations that do appear in the Amended Complaint either include isolated incidents, e.g., being called a "worker bee," or generalized assertions that lack any factual detail, e.g., exclusion from meetings. Simply put, even when construing the facts in the light most favorable to Plaintiff, Plaintiff's allegations fall short of the "severe" and "pervasive" standard. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (holding that the Supreme Court set forth "steep requirements" for hostile work environment claims); *Taylor v. Go-Getters, Inc.*, Civ. No. ELH-20-3624, 2021 WL 5840956, at *12 (D. Md. Dec. 9, 2021) (finding that "[c]ourts in this [c]ircuit have consistently declined to find a hostile work environment based on facts far worse" when ruling on a case in which the defendant "constantly" called plaintiff outside work hours, reprimanded plaintiff, warned plaintiff that '[b]lack [m]ale[s] historically do not do well and failed to provide him with effective assistance'); *See also Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of yelling at the plaintiff in a meeting, consistently criticizing the plaintiff for mistakes, and "unfairly scrutinizing and criticizing" plaintiff's failure to follow instructions, fall "*far short* of being severe or pervasive enough to establish an abusive environment") (emphasis added); *Vincent v. MedStar S. Md. Hosp. Ctr.*, Civ. No. TDC-16-1438, 2017 WL 3668756, at *10 (D. Md. Aug. 22, 2017); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that "offhand comments and isolated incidents (*unless extremely serious*)" are insufficient to establish a hostile work environment) (emphasis added).

Accordingly, the Defendants' Motion related to the hostile work environment claim is granted.

**V.      Conclusion**

For the foregoing reasons, the Motion is **DENIED** as to Count I, the Title VII wrongful termination claim. With respect to Count II, the Motion is **GRANTED** and Count II is **DISMISSED WITH PREJUDICE**. Finally, regarding Count III, the Motion is **GRANTED** and Count III is **DISMISSED WITHOUT PREJUDICE**.

A separate Order follows.

Dated:  February 3, 2023                                          _____/s/_____

                                                                                     The Honorable Gina L. Simms
                                                                                     United States Magistrate Judge